UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────

UNITED STATES OF AMERICA,

v.

Case # 25-CR-6033-FPG

DECISION AND ORDER

PATRICK J. STEINMETZ,

                Defendant.
─────────────────────────────────

# INTRODUCTION

On February 25, 2025, Defendant Patrick J. Steinmetz was indicted on two counts of production of child pornography in violation of 18 U.S.C. § 2251(a) and (e) (Counts 1 and 2) and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 3). ECF No. 42. By Order dated February 25, 2025, this case was referred to United States Magistrate Judge Colleen D. Holland pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (b)(1)(B). ECF No. 44.

Defendant has moved for suppression of (1) evidence derived from the search and seizure of his cell phones; (2) evidence derived from the execution of a search warrant on his cell phones; and (3) statements made to law enforcement. ECF Nos. 57, 65, 70. On December 4, 2025, Judge Holland filed a Report & Recommendation ("R&R"), ECF No. 81, recommending the denial of Defendant's motions. Defendant has filed his objections to the R&R, ECF No. 85, and the Government has responded, ECF No. 87. For the reasons that follow, the R&R is ADOPTED, and Defendant's motions to suppress are DENIED.

# LEGAL STANDARD

A district court reviews those portions of an R&R to which a party has timely objected *de novo*. Fed. R. Crim. P. 59(b)(3). When a party does not object to a portion of an R&R, or when the

1

objections are conclusory, general, or without legal support, a district court reviews those portions for clear error. *See United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009).

After reviewing the R&R and the objections thereto, a district court "may accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3). "As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of that point." *United States v. Willis*, No. 13-CR-6013, 2015 WL 1915123, at *2 (W.D.N.Y. Apr. 27, 2015); *see also* Fed. R. Crim. P. 59. ("Failure to object in accordance with this rule waives a party's right to review.").

## BACKGROUND

The R&R contains a thorough description of the relevant facts in this case, and therefore, the Court will only briefly address the relevant factual background. On March 30, 2024, deputies from the Livingston County Sheriff's Office were dispatched to investigate reports that a minor ("MV1") had been sexually assaulted by Defendant. ECF No. 70-1 ¶ 4. On April 1, 2024, investigators learned that Defendant had used a cell phone to take sexual photos and recordings of MV1. ECF No. 76 at 3. After MV1 informed a relative that Defendant had used a cell phone to take sexual photos and recordings of MV1, MV1 went to Defendant's bedroom, which Defendant shared with his wife, Carrie Steinmetz ("Carrie"), and MV1 located five cell phones there. Gov't Briefing Exh. 3. MV1 then gave those cell phones to a relative who provided them to law enforcement. *Id.*

On April 2, 2024, Carrie provided a written statement in which she indicated that any of the cell phones recovered from her shared bedroom with Defendant were owned by her and that she was the "bill payer and purchaser for all the devices used and owned" by her family members. Gov't Briefing Exh. 5. She also gave investigators permission to search all of the devices, including the cell phones, found in the bedroom. *Id.* Additionally, Carrie signed consent forms for searches

2

of four of the cell phones, including a Max West Astro 55R. Gov't Briefing Exh. 6. On April 2, 2024, Investigator Sanford of the Livingston County Sheriff's Office performed a forensic examination of the Max West Astro 55R phone and recovered files depicting MV1's naked body and Defendant committing a sexual assault on MV1. ECF No. 1 ¶ 16.

On April 4, 2024, Defendant was interviewed by law enforcement. Gov't Hearing Exh. 4. At the interview, Defendant was read his *Miranda* rights, and he indicated that he understood those rights. *Id.* After he was read his rights, Defendant also indicated that he was willing to answer questions. *Id.* Defendant then signed a written *Miranda* warning form and proceeded to speak with investigators about the allegations against him. Gov't Hearing Exhs. 1, 4. On March 28, 2025, Judge Pedersen signed a search warrant authorizing a forensic examination of four cell phones that had been recovered from Defendant's bedroom. Gov't Briefing Exh. 7.

## DISCUSSION

Defendant objects to Judge Holland's recommendation that this Court deny his motions to suppress (I) evidence derived from the search and seizure of his cell phone; (II) evidence derived from the execution of a search warrant on his cell phone; and (III) statements made to law enforcement.[1] *See* ECF No. 85. The Court discusses each motion below.

**I.   Motion to Suppress Evidence Derived from the Search and Seizure of the Cell Phone**

Defendant argues that Judge Holland erred (a) by denying his request for an evidentiary hearing as to the warrantless search of his Max West Astro 55R cell phone ("the Cell Phone"); and

---

[1] Initially, Defendant moved to suppress evidence from all four cell phones that had been searched by law enforcement. However, neither party has objected to Judge Holland's finding that while Defendant has standing to challenge the searches of the Max West Astro 55R cell phone, he lacks standing to challenge the searches of the other three cell phones. *See* ECF No. 81 at 20. As such, the Court reviews the R&R's finding on this matter for clear error. *See Preston*, 635 F. Supp. 2d at 269. Based upon such a review, the Court finds no clear error in Judge Holland's recommendation and adopts Judge Holland's finding that Defendant lacks standing to challenge the searches of the other three cell phones. Because Defendant lacks standing to challenge the searches of the other three cell phones, the Court need not discuss them further and will hereafter refer to the Max West Astro 55R Cell Phone as "the cell phone."

3

(b) by finding that Carrie had apparent authority to give permission to law enforcement to search Defendant's Cell Phone. ECF No. 85 at 2–7. Therefore, he objects to Judge Holland's recommendation that his motion to suppress the evidence derived from the warrantless search of his Cell Phone be denied. The Court discusses each argument in turn.

### a. Denial of Request for Evidentiary Hearing

Defendant argues that Judge Holland erred in recommending that his motion to suppress cell phone evidence be denied without a hearing because there are contested issues of fact in question as to the validity of the search. *See* ECF No. 85 at 2–5. First, Defendant argues that the record shows that there are contradictory statements regarding disputed issues that Judge Holland failed to resolve in the R&R. *Id.* at 3. Specifically, Defendant argues that he provided an Affirmation from his attorney, Robert W. Wood, stating that Mr. Wood spoke to Carrie "twice by telephone, and she told [Mr. Wood] she never used any of the phones used by [Defendant], nor did he ever use any of her phones." *Id.* Defendant argues that this statement directly contradicts the statements made by the Government in its response, which states that Defendant's wife Carrie gave law enforcement officers permission to search the cell phones. *Id.* Further, Defendant argues that his affidavit in which he states that he paid for and used his phones and Carrie paid for and used her phones directly contradicts the Government's statement that his wife Carrie gave consent for law enforcement to search the cell phones after she indicated that she owned, bought, and paid for them. *Id.*

Second, Defendant argues that Judge Holland erred in the R&R by relying on the Government's version of the facts. *Id.* at 4. Specifically, Defendant argues that because there was no hearing, there was no sworn testimony upon which Judge Holland could rely on to make findings in the R&R and therefore, Judge Holland found that Carrie had apparent authority to consent to the search of the Cell Phone based solely on the Government's responding papers. *Id.*

4

Specifically, he argues that there is no sworn testimony as to the circumstances of how law enforcement initially obtained the cell phones and there are no affidavits from law enforcement officers who directly searched the Cell Phone as to the date and time the Cell Phone was searched or whether such a search occurred before or after Carrie gave consent. *Id.* at 5. Defendant further argues that the R&R cites only to the complaint to support its conclusion that the Cell Phone was searched after Carrie signed the consent form on April 2, 2024, and that the complaint is hearsay because it was signed by an officer who did not search the cell phone. *Id.*

"[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005) (quotation omitted). "To sufficiently raise an issue of fact, the defendant, in moving for a suppression hearing, must include an affidavit of someone alleging personal knowledge of the relevant fact, and that fact must put the issue of the legality of the warrantless stop into contention." *United States v. Marquez*, 367 F. Supp. 2d 600, 603 (S.D.N.Y. 2005) (citing *United States v. Gillette*, 383 F.2d 843, 848–49 (2d Cir. 1967)). Where "a defendant's allegations are based entirely on speculation or conjecture, the defendant is not entitled to an evidentiary hearing." *United States v. Villanueva*, 32 F. Supp. 2d 635, 639 n.4 (S.D.N.Y. 1998); *see also United States v. Castellano*, 610 F. Supp. 1359, 1439 (S.D.N.Y. 1985) ("No evidentiary hearing need be held where a defendant's allegations are general and conclusory or are based upon suspicion and conjecture."). Further, a district court is not required to hold an evidentiary hearing where a defendant's "moving papers did not state sufficient facts which, if proven, would have required the granting of the relief requested." *United States v. Culotta*, 413 F.2d 1343, 1345 (2d Cir. 1969).

In the R&R, Judge Holland explained that at the oral argument, Defense counsel stated that two factual disputes existed, which warranted an evidentiary hearing. ECF No. 81 at 21. The first concerned the relationship between Carrie and the cell phones, and the second concerned whether MV1 was acting at the behest of law enforcement when she recovered the cell phones from Defendant's residence. *Id.* As for Defendant's argument related to his wife's relationship with the cell phones, Judge Holland concluded that no evidentiary hearing was necessary because even if the court were to assume that Defendant's statements were true and that Carrie did not purchase, use, or pay the bills for the Cell Phone, she still had apparent authority to consent to the search. *Id.* at 23. As for Defendant's argument that MV1 may have been acting at the behest of law enforcement, Judge Holland concluded that no evidentiary hearing was required because Defendant did not provide an affidavit from an individual with actual knowledge regarding this issue and pointed to nothing other than speculation regarding the timing of the phone's retrieval to support his assertion that MV1 was acting at the behest of law enforcement. *Id.* at 21.

This Court agrees with Judge Holland. As for Defendant's argument that there are contradictory statements regarding Carrie's relationship with Defendant's Cell Phone, Defense counsel's affirmation is not sufficient to create an issue of fact. *See United States v. Tata,* No. 11-CR-6083, 2011 WL 7004205, at *1 (W.D.N.Y. Nov. 21, 2011), *adopted*, 2012 WL 92558 (W.D.N.Y. Jan. 11, 2012) ("An attorney's affidavit made without personal knowledge is insufficient to create an issue of fact requiring an evidentiary hearing."). Regarding Defendant's argument that an evidentiary hearing is required to resolve the conflict between Defendant's statement in his affidavit and Carrie's statements, this Court rejects that argument. As will be discussed further below, even if it were proven that Defendant paid for and used his cell phones and Carrie paid for and used her cell phones, Plaintiff would not be entitled to suppression of the

6

evidence derived from the search of his Cell Phone because Carrie nevertheless had apparent authority to consent to the search. *See Culotta*, 413 F.2d at 1345. As such, no hearing is warranted.

As for Defendant's argument that Judge Holland erred by relying on the Government's version of events regarding how law enforcement came to be in possession of the Cell Phone, the Court also rejects that argument. Defendant has suggested that there are questions about how law enforcement came into possession of the Cell Phone, but he has provided no affidavits from someone alleging personal knowledge to support that suggestion.[2] *See* ECF No. 85 at 4. Indeed, Defendant only offers speculation to support his suggestions that the circumstances of how law enforcement obtained the Cell Phone are unclear and that MV1 may have been working at the behest of law enforcement. *See id.* As the Court discussed above, no evidentiary hearing is required where Defendant's allegations are based simply on speculation and therefore, no hearing is required on this basis. *See Villanueva*, 32 F. Supp. 2d at 639 n.4.

As for Defendant's final argument that it is unclear when the Cell Phone was searched and whether the search occurred before or after Carrie gave consent to search the cell phone, it does not appear from the record that this argument was raised in front of Judge Holland. *See* ECF Nos. 57, 65, 70. Therefore, this argument may have been waived. *See Hubbard v. Kelley*, 752 F. Supp. 2d 311, 313 (W.D.N.Y. 2009) ("In this . . . circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (quotation omitted). Nevertheless, even assuming that it has not been waived, there is no merit to this argument. Again, Defendant

---

[2] In his motion to suppress, ECF No. 70-1 ¶ 20, Defendant argues that his Fourth Amendment rights were violated when MV1 removed the Cell Phone from his residence without permission. In the R&R, Judge Holland concluded that there was no Fourth Amendment violation because the Cell Phone was turned over to law enforcement after it was obtained by a private individual, MV1, and that there was no indication that MV1 was acting at the behest of law enforcement. ECF No. 81 at 24. Neither party has objected to this finding. The Court therefore reviews the R&R's finding on this matter for clear error. *See Preston*, 635 F. Supp. 2d at 269. Based upon such a review, the Court finds no clear error in Judge Holland's recommendation and adopts this finding.

has not provided an affidavit from someone alleging personal knowledge to support his suggestion that the Cell Phone may have been searched prior to Carrie giving consent and instead, merely relies on speculation to support his contention. Thus, no hearing is warranted on this basis. To the extent that Defendant is arguing that it was improper for Judge Holland to find that the search took place on April 2, 2024, based on hearsay in the complaint, there is also no merit to this argument because hearsay evidence may be considered when determining a motion to suppress. *See* Fed. R. Evid. 104(a) (court not bound by rules of evidence in preliminary proceedings concerning admissibility of evidence, except for issues of privilege); *see also United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 84 (2d Cir. 2002) ("[I]t is well-settled that hearsay may properly be considered by a court in determining a suppression motion.") (citing *United States v. Matlock*, 415 U.S. 164, 172–73 (1974)). Accordingly, the Court ADOPTS Judge Holland's finding that no evidentiary hearing is required.

    **b. Apparent Authority to Consent to Search**

Next, Defendant argues that Judge Holland erred in finding that Carrie had apparent authority to consent to the search of Defendant's Cell Phone. ECF No. 85 at 5–6. Specifically, Defendant argues that ownership or paying the bill for a cell phone does not establish apparent authority to conduct a search and that nothing in the consent form signed by Carrie establishes that Carrie had joint use or has ever used the phone. *Id.* at 6,

"A warrantless search does not violate the Fourth Amendment if voluntary consent to the search is given by a third person who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Boone*, No. 24-2483-CR, 2025 WL 3034224, at *4 (2d Cir. Oct. 30, 2025) (summary order) (quotation omitted). "Even if the person giving consent in fact lacked authority to do so, the consent may nonetheless validate the search if the person reasonably appeared to the police to possess authority to consent

to the search." *United States v. McGee*, 564 F.3d 136, 139 (2d Cir. 2009). "The Supreme Court has explained that apparent authority to give consent 'must be judged against an objective standard: would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises [or property.]" *Id.* (alteration in original) (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)); *see also United States v. Marandola*, 489 F. App'x. 522, 523 (2d Cir. 2013) (summary order) (holding that wife had apparent authority to consent to search of husband's computer); *United States v. Archambault*, No. 13-CR-100, 2016 WL 3546022 (W.D.N.Y. May 10, 2016) (holding that a defendant's mother had apparent authority to consent the search of her son's cell phone)).

In the R&R, Judge Holland concluded that the Government proved by a preponderance of the evidence that law enforcement reasonably believed on April 2, 2024, that Carrie had authority to consent to the search of Defendant's cell phone. ECF No. 81 at 28. Judge Holland reached this conclusion because (1) Carrie was able to access the phone with a passcode; (2) the Cell Phone was found in a bedroom that Carrie and Defendant shared as husband and wife; and (3) Carrie affirmed under penalty of perjury that she owned, purchased, and paid the bills for the Cell Phone and there was no reason to question those representations at the time she consented to the search. ECF No. 81 at 29. Judge Holland also concluded that Defendant's contradictory evidence that Defendant paid for and used his cell phones and that Carrie paid for and used her cell phones, even if accepted as true, did not change this analysis because this was not known to law enforcement at the time of the search. *Id.* at 29–30.

For the same reasons as articulated by Judge Holland in the R&R and summarized above, this Court concludes that the Government has proven by a preponderance of the evidence that law enforcement reasonably believed on April 2, 2024, that Carrie had authority to consent to the search. *See Marandola*, 489 F. App'x. at 523 (holding that it was reasonable for detectives to

9

believe that a wife had authority to consent to the search of her husband's computer despite her husband's arguments that she only used the computer sparingly); *Archambault*, 2016 WL 3546022, at *4 (holding that even if the defendant owned and had exclusive use of his cell phone, his mother still had apparent authority to consent to the search based on the facts known to law enforcement at the time of the search); *United States v. Gregg*, No. 17-CR-409, 2017 WL 7101172, at *8 (M.D. Fla. Dec. 14, 2017) (holding that the defendant's wife had apparent authority to consent to the search of a cell phone "given that [she] had joint access to and control of the house, the bedroom, the closet, and the bedside table where she found the devices, and the lack of any indication that [the d]efendant forbade her from using the devices"), *adopted*, 2018 WL 585550 (M.D. Fla. Jan. 29, 2018), *aff'd*, 771 F. App'x 983 (11th Cir. 2019). While Defendant argues that he has provided evidence contradicting Carrie's written affirmation and the signed consent form, that does not change the Court's analysis because that evidence was not known to the officers at the time of the search. Therefore, the Court ADOPTS Judge Holland's findings that due to Carrie's ability to access the Cell Phone, the Cell Phone being found in a shared bedroom, and Carrie's affirmation that she owned, purchased, and paid bills for the Cell Phone, the Government has proven by a preponderance of the evidence that law enforcement reasonably believed on April 2, 2024, that Carrie had authority to consent to the search. Accordingly, Defendant's motion to suppress evidence derived from the search and seizure of his cell phone is DENIED.

II. **Motion to Suppress Evidence Derived from the Execution of a Search Warrant on the Cell Phone**

Defendant objects to Judge Holland's recommendation to deny his motion to suppress evidence derived from the execution of a search warrant on his Cell Phone, arguing that the evidence must be suppressed because (a) the search warrant was secured using information from

the earlier warrantless search and thus the evidence is fruits of a poisonous tree; and (b) the good faith exception does not apply. ECF No. 85 at 7–8. The Court discusses each argument in turn.

### a. Validity of the Search Warrant

Defendant argues that the search warrant was obtained using evidence derived from the earlier unlawful search and that as such, any evidence derived from the second search pursuant to the search warrant must be suppressed because the evidence is "fruit of a poisonous tree." *Id*. In the R&R, Judge Holland concluded that because the initial search was lawful, the evidence derived from the second search was not fruit of a poisonous tree because where "there is no poisonous tree[,] there can be no fruit." ECF No. 81 at 30 (quoting *United States v. Antonelli*, 434 F.2d 335, 338 (2d Cir. 1970). This Court agrees with Judge Holland. As the Court explained above, the first search was lawful. Therefore, there was nothing unlawful about using evidence derived from the earlier search to secure a search warrant and the evidence derived from the search warrant is not fruit of a poisonous tree. *See Antonelli*, 434 F.2d at 338.

### b. Good Faith Exception

Defendant also argues that Judge Holland erred in finding that in the event the search warrant was found unlawful, the good faith exception would apply. ECF No. 85 at 8. Specifically, Defendant argues that there is no supporting competent evidence to establish that the good faith exception should apply. *Id.*

Pursuant to the good faith exception, where a search warrant is found unlawful, exclusion of evidence derived from it is not required so long as the government acted in "objectively reasonable reliance on [the] subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). However, there are limited circumstances in which the exception does not apply:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011) (quotation omitted).

In the R&R, Judge Holland concluded that even if the search warrant were to be found unlawful, suppression of the evidence derived from it would not be required because the good faith exception would apply. ECF No. 81 at 31. Specifically, Judge Holland looked at the warrant application and evaluated the evidence that remained after removing the information found pursuant to the earlier search. After removing such information, Judge Holland found that the warrant application detailed MV1's statements to law enforcement regarding Defendant's use of a cell phone to make video recordings and take photographs of MV1's naked body and of his sexual abuse of MV1. *Id.* Further, Judge Holland found that the application set forth the circumstances under which the Cell Phone was obtained by MV1 from Defendant's bedroom and turned over to law enforcement. *Id.* at 31–32. Judge Holland therefore found that even if the information obtained from the earlier search were removed from the warrant application, the remaining evidence would still be sufficient to support a finding of probable cause. *Id.* Consequently, Judge Holland concluded that the warrant was neither facially deficient nor so lacking in indicia of probable cause as to render reliance upon it unreasonable. *Id.* at 33. Judge Holland also concluded that there was no indication that the magistrate who signed the warrant had been knowingly misled or that he had wholly abandoned his judicial role. *Id.*

For the same reasons Judge Holland identified as summarized above, this Court concludes that the warrant at issue was lawful, but that even if it were not, the good faith exception would apply. While it is unclear which exception to the good faith exception Defendant is arguing applies in this case, as Judge Holland explained, even excluding the information that was obtained from

12

the initial search, the warrant application included MV1's statements about Defendant's use of a cell phone and the circumstances by which the Cell Phone was obtained, which was sufficient to establish probable cause. *See United States v. Gaskin*, 364 F.3d 438, 457 (2d Cir. 2004) (holding that probable cause "does not demand certainty but only a 'fair probability' that contraband or evidence of a crime will be found"). Additionally, there is no evidence in the record that the magistrate who signed the warrant had been knowingly misled or that he had wholly abandoned his judicial role. Accordingly, the Court ADOPTS Judge Holland's finding that the search warrant was lawful and her finding that even if the warrant were deficient in some manner, the good faith exception would apply. Therefore, Defendant's motion to suppress evidence derived from the search warrant is DENIED.

### III.     Motion to Suppress Statements

Defendant objects to Judge Holland's recommendation to deny his motion to suppress statements and/or admissions involuntarily made by Defendant to law enforcement officers. ECF No. 85 at 9. Defendant asserts that it was established at the evidentiary hearing held by Judge Holland regarding this motion that Defendant had attempted suicide two days prior to the interview with law enforcement, and he claims that on the day of the interview, he was using THC and cocaine from "the moment he woke up." *Id*. Therefore, Defendant argues that his statements should be suppressed due to his diminished capacity at the time of the interview and because Investigator Sanford quickly read Defendant his *Miranda* warnings and failed to ask if Defendant had been using drugs. *Id.*

"The Government bears the burden of proving by a preponderance of evidence that a valid waiver occurred." *United States v. Murphy*, 703 F.3d 182, 192 (2d Cir. 2012). To prove a valid waiver, the Government must prove that Defendant's relinquishment of his rights was (1) "knowing, which is to say that the waiver must have been made with a full awareness of both the

13

nature of the right being abandoned and the consequences of the decision to abandon it," and (2) "voluntary, which is to say that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Plugh*, 648 F.3d 118, 127 (2d Cir. 2011) (quotation omitted). The Court assesses the "totality of circumstances surrounding a *Miranda* waiver and any subsequent statements to determine knowledge and voluntariness." *United States v. Mendonca*, 88 F.4th 144, 164 (2d Cir. 2023).

In the R&R, Judge Holland concluded that the Government had met its burden to show that Defendant's waiver of his *Miranda* rights was knowing and voluntary. ECF No. 81 at 36. Judge Holland found that Defendant was advised of his *Miranda* rights, that he indicated that he understood them, that he voluntarily agreed to speak with law enforcement, and that he signed a written waiver form. *Id.* at 34. Judge Holland also found Investigator Sanford's testimony that Defendant did not appear to be under the influence of drugs or alcohol at the time of the interview credible. *Id.* at 35. Further, Judge Holland found Defendant's testimony that he was too impaired by THC and cocaine to understand or waive his rights not credible and not supported by the evidence of record. *Id.* Specifically, she found that during the interview, Defendant (1) was able to provide detailed information about his family and history; (2) was lucid and aware of what was going on; (3) provided responsive and coherent answers to questions; (4) asked his own relevant questions about the proceedings; and (5) showed no signs of confusion or incomprehension when he was read his rights. *Id.* at 35–36. Judge Holland also found that Defendant's voice, demeanor, and manner of speaking were essentially the same in the video of his interview as they were when he was speaking on the witness stand, when he was indisputably not under the influence of drugs. *Id.*

Additionally, Judge Holland found that Defendant's testimony that he had very little memory of the interview not credible, as Defendant was selectively able to remember portions of

that day in detail. *Id.* at 35. For instance, Defendant recalled precisely what happened at his doctor's appointment that same morning, he remembered who was sitting where in the vehicle when he was driving to the Sheriff's office from the appointment, and he remembered his interaction with his wife after the end of the interview. *Id.* at 36. Judge Holland therefore concluded that it was "wholly unbelievable" that he had no memory of the interview due to drugs and mental health issues but remembered the events immediately before and after. *Id.* Finally, Judge Holland rejected Defendant's argument that Investigator Sanford was required to ask Defendant if he was under the influence of drugs or alcohol or inquire about his mental health because Defendant cited no case law in support of the proposition that law enforcement officer must make such an inquiry where a Defendant did not appear to be under the influence of drugs or alcohol. *Id.*

The Court agrees with Judge Holland that the totality of the circumstances demonstrates that Defendant knowingly and voluntarily waived his *Miranda* rights. As for Defendant's argument that he had a diminished capacity at the time of the interview, as Judge Holland explained, the evidence of record does not suggest that he was too impaired to understand and waive his *Miranda* rights. *See* ECF No. 81 at 35–36. As for Defendant's proposition that law enforcement officers were required to ask whether he was under the influence of drugs or inquire about his mental health, again, Defendant has cited no case law to support this assertion. *See* ECF No. 85. Defendant also cites no case law to support his argument that suppression of evidence is warranted because Investigator Sanford read Defendant his *Miranda* rights quickly. *See id; see also United States v. Green*, No. 20-CR-110, 2021 WL 1807860, at *2 (W.D.N.Y. May 6, 2021) (holding that suppression of evidence is not warranted on the basis that *Miranda* rights were read quickly so long as the evidence suggests that a defendant was given his *Miranda* rights and that the defendant understood those rights).

Consequently, the Court concludes that for the same reasons as described in the R&R and summarized above, the evidence of record demonstrates that when Defendant made statements to law enforcement he was aware "of both the nature of the right being abandoned and the consequences of the decision to abandon it" and that those statements were "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Plugh*, 648 F.3d at 127; *see* ECF No. 81 at 34–36. As such, the Court ADOPTS Judge Holland's finding that Defendant's waiver of his *Miranda* rights was knowing and voluntary, and Defendant's motion to suppress statements is accordingly DENIED.

## CONCLUSION

For the foregoing reasons, the Court ADOPTS Magistrate Judge Holland's R&R (ECF No. 81), and Defendant's motions to suppress (ECF Nos. 57, 65, 70) are DENIED.

IT IS SO ORDERED.

Dated: February 4, 2026
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York